United States District Court
Southern District of Texas
**ENTERED**
June 24, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHISN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| David Alexander, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-20-2997 |
| | § | |
| Kilolo Kijakazi,[1] | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant.* | § | |

## Memorandum and Recommendation

David Alexander appeals the Social Security Administration (SSA) Commissioner's final decision denying his application for social security benefits. ECF No. 1. Pending before the court is Plaintiff's Motion for Summary Judgment, ECF No. 18, and Defendant's Motion for Summary Judgment, ECF No. 19. These motions are before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). Having considered the motions, administrative record, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

---

[1] Kilolo Kijakazi is Acting Commissioner of the SSA and is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d). *See also* 42 U.S.C. § 405(g).

### 1. Procedural Posture

Alexander applied for disability insurance benefits on November 29, 2017. Tr. 175, 190, 267–68. Alexander claimed that he became disabled on May 9, 2017, later amending the alleged onset date to November 10, 2017. Tr. 68, 98, 163–64, 176–77, 262. Alexander claimed disability due to memory loss, dementia, depression, and anxiety. Tr. 163–64, 177. Alexander was born on July 5, 1968, and was forty-eight years old on the alleged disability onset date. Tr. 163, 176. Alexander has a high school education. Tr. 145, 294. Before filing for disability benefits, Alexander worked as a security officer and director of security. Tr. 99–100, 105, 286–87, 294.

The SSA denied Alexander's application on March 27, 2018, and again on reconsideration on October 19, 2018. Tr. 173, 175, 188, 190. At Alexander's request, Administrative Law Judge (ALJ) Michelle Whetsel held a hearing on June 18, 2019, in Houston, Texas. Tr. 91, 203–04.

At the hearing, the ALJ heard testimony from Alexander, Alexander's fiancée Maureen Miranda, and a vocational expert (VE). Tr. 102–55. Alexander was represented by an attorney. Tr. 91.

Alexander testified about his mental impairments, including his memory problems. Tr. 105–09. He explained that he had difficulty paying his own bills and would forget to do so. Tr. 104. He testified that he was demoted from director of

security to security officer because he could not perform his payroll and training duties given his memory loss. Tr. 105. Even with the demotion, Alexander said that his memory problems still caused him trouble. He said that he would forget which room he was supposed to go to and could no longer type on a keyboard. Tr. 106–07. In terms of activities of daily living, Alexander stated that he would forget to bathe and would lose his keys daily. Tr. 107. He explained that his fiancée would help him remember appointments and grocery shop. Tr. 107–08. Alexander also said that he could not cook, wash clothes, or drive. Tr. 108. He explained that he could not use the credit card machine at the store, would forget to turn the stove off, and would get into traffic accidents and get lost if he tried to drive. Tr. 108.

With respect to physical problems, Alexander testified that he experienced pain in his arm, neck, and back. Tr. 110. He said that he experienced tingling in his hand and pain in his shoulder. *Id.* Alexander stated that he had a surgery on his neck and thereafter had difficulty turning his neck and that he had difficulty reaching with his right shoulder. Tr. 111. In response to questions from the ALJ, Alexander explained that he could walk his dog twice a day, attend church, visit with family, and watch television. Tr. 119–21. He was able to bathe, dress, eat, brush his teeth, and comb his hair. Tr. 121. He told the ALJ he had never been hospitalized for his memory problems. *Id.*

3

Miranda testified about her observations of Alexander. Tr. 129–42. She said that she had handled Alexander's finances since mid-2017 because he would forget to pay his bills. Tr. 129. She said that she first noticed in February 2017 that Alexander would forget conversations and events within a day. Tr. 130. Miranda confirmed Alexander's trouble at work and his difficulty driving. Tr. 131, 133. She stated that Alexander would forget computer passwords, lose his car, and get lost at the mall. Tr. 132–34. Miranda confirmed that Alexander would forget to shower and would ask her if he had showered that day. Tr. 134. She stated that Alexander had forgotten how to use the remote control for the television. Tr. 136.

The ALJ asked the VE a series of hypothetical questions that assumed a person with the residual functional capacity (RFC) to perform the full range of work at all exertional levels but who could never climb ladders, ropes, or scaffolds; should avoid exposure to dangerous machinery and unprotected heights; could remember and follow simple instructions; could perform assigned tasks but not always at a production rate; could occasionally adapt to rapid changes in the workplace; could have occasional contact with co-workers, supervisors, and the general public; and who would require daily redirection or instruction. Tr. 145–49. The VE testified that such a hypothetical person would not be able to perform Alexander's past work, but could perform other work, including janitor, dishwasher, laundry press operator, and sorter. Tr. 146–49.

The ALJ issued a decision on October 8, 2019, finding that, because Alexander was able to perform jobs available in sufficient numbers in the national economy, he was not disabled from the alleged onset date through the date of the decision. Tr. 68–81. The Appeals Council denied Alexander's request for review of the ALJ's decision on June 26, 2020. Tr. 27–29. Alexander timely filed his federal complaint on August 26, 2020. ECF No. 1.

## 2. Legal Standards

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program. *See* 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); *see also* 20 C.F.R. § 404.1520(a)(4)(2017). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. § 404.1520(a)(4) (2017).

This court's review of the ALJ's disability determination is "highly deferential," and the court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 3. Analysis of the ALJ's Determination

### A. Step One

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2017). A person engaged in substantial gainful activity is not disabled, regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b) (2017).

The ALJ found that Alexander had not engaged in substantial gainful activity since the alleged disability onset date of June 16, 2017. Tr. 71. This finding is not in dispute.

## B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2017) (citing 20 C.F.R. § 404.1509). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2017). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond*, 892 F.3d at 817 (emphasis omitted) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). If a person does not have a severe impairment, he is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Alexander had the following severe impairments: "peripheral neuropathy in left hand, anxiety, depression, dementia without behavioral disturbance and obesity." Tr. 71. This finding is not in dispute.

## C. Step Three

At step three, the ALJ determines if any of the claimant's severe impairments meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R.

§ 404.1520(a)(4)(iii) (2017); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2017).

If all the criteria of a Listing are met or equaled, the claimant is considered disabled.

20 C.F.R. § 404.1520(d) (2017); *Whitehead*, 820 F.3d at 780–81.

The ALJ found that neither Alexander's neuropathy nor his obesity met or medically equaled any Listing. Tr. 71. This finding is not in dispute.

With respect to Alexander's mental impairments, the ALJ considered Listings 12.04, pertaining to depressive, bipolar, and related disorders, and 12.05, pertaining to intellectual disorders. Tr. 72–74. Both of those Listings require the ALJ to analyze the "paragraph B" criteria, which describe four broad areas of mental functioning. *See* Listing 12.00(E). To meet a listing that includes the paragraph B criteria, the claimant must have an extreme limitation in one or a marked limitation in two of the criteria. Listing 12.00(F)(2).

Based on Alexander's function report and his hearing testimony, the ALJ assessed Alexander's mental functioning in each of the four broad areas. *See* Tr. 72, 102–27, 312–19. Because the record showed that Alexander had difficulty with memory in general, the ALJ found that Alexander had marked limitation in his ability to understand, remember, or apply information. Tr. 72, 105–07, 312–19. The ALJ assessed Alexander's limitations in interacting with others to be moderate. Tr. 72. The ALJ noted that, while Alexander stated he had difficulty engaging in social activities, he also said he was "able to attend church and live with others[.]"

*Id.* The ALJ found that Alexander's ability to concentrate, persist, and maintain pace was moderately limited. *Id.* She explained that finding by noting that Alexander could drive, watch TV, and attend church. *Id.* Finally, the ALJ determined that Alexander was moderately limited in his ability to adapt and manage himself. *Id.* This finding was based on Alexander's ability to care for his dog and attend medical appointments with a nicely dressed and well-groomed appearance. *Id.* Because Alexander did not exhibit any extreme limitations and had a marked limitation in only one of the broad areas of functioning, he did not meet either Listing 12.04 or 12.05. *See* Tr. 73.

The ALJ further analyzed criteria unique to Listing 12.05. The ALJ found that testing showed Alexander's IQ score to be within the average range and that the evidence showed average intellectual functioning. Tr. 73–74. For those additional reasons, Alexander's intellectual functioning did not meet Listing 12.05. *See* Tr. 73–74.

The ALJ's findings at Step 3 are unchallenged and are supported by substantial evidence.

## D. RFC

Before reaching the final two steps, the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(e) (2017) (citing 20 C.F.R. § 404.1545). The RFC is a determination of the most a claimant can do despite all physical and mental

limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1));
SSR 96-8p, 1996 WL 374184, at *2, 4 (July 2, 1996). The RFC determination is
"based on all the relevant medical and other evidence in [the] case record[.]"
20 C.F.R. § 404.1520(e) (2017); *see Perez*, 415 F.3d at 461–62 (citing 20 C.F.R.
§ 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2, 3, 5 (July 2, 1996). Evidence
includes objective medical evidence; medical opinion; other medical evidence, such
as medical history, diagnosis, and prognosis; information from the claimant or other
nonmedical source; and prior administrative medical findings of state agency
reviewing consultants. 20 C.F.R. § 404.1513(a) (2017).

The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R.
§ 404.1546(c) (2017); s*ee also Taylor v. Astrue,* 706 F.3d 600, 602–03 (5th Cir.
2012) (stating that the RFC determination is the "sole responsibility of the ALJ").
The ALJ also bears the responsibility of resolving conflicts in medical opinions.
*See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "The RFC assessment
must include a narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical
evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7
(July 2, 1996).

The ALJ determined that Alexander had the RFC:

[T]o perform a full range of work at all exertional levels . . . except that
he should never climb ladders, ropes, or scaffolds. He should avoid all

exposure to dangerous moving machinery and unprotected heights. He can remember and follow simple instructions. The claimant can perform the tasks assigned[] but not always at a production rate pace. However, he can meet the end of day work goals. The claimant can have occasional contact with co-workers, supervisors, and the general public. He can occasionally adapt to rapid changes in the workplace. Due to his impairments, the claimant may require occasional (meaning up to once per day) repeated instructions or redirection during the workday.

Tr. 74.

The ALJ engaged in a thorough discussion of Alexander's physical and mental medical records and compared those to Alexander's self-reported symptoms. Tr. 75–78. The ALJ found that Alexander's impairments could reasonably cause Alexander's symptoms but that Alexander's report of those symptoms were not consistent with the record. Tr. 75.

In terms of his physical symptoms, while Alexander complained of problems with his shoulder and hands, the ALJ, relying on the medical records, found that Alexander was not more limited than indicated in the RFC. Tr. 75. For example, Alexander exhibited 5/5 strength in all muscle groups on August 15, 2018, and on October 11, 2018. Tr. 475, 499. On May 17, 2018, although Alexander was experiencing pain in his shoulder, his right shoulder range of motion was documented as "good." Tr. 553. The medical records also reflect that Alexander engaged in regular exercise. Tr. 568.

Turning to Alexander's mental health records, the ALJ found that "despite significant allegations and the demonstration of some limitations, the claimant still had some degree of interaction with others, was alert and oriented." Tr. 76. A neurological examination on April 18, 2017, showed his cortical (relating to the cerebral cortex) function to be "normal, alert and oriented X 3, comprehension and language intact, speech fluent." Tr. 392; *see also* Tr. 399, 402, 406. The ALJ noted that in September 2017, Robert Davis, Ph.D., concluded that Alexander "demonstrated highly unusual variability in his test performance" and that his neurological test results were possibly being impacted by non-neurological factors such as depression or anxiety. Tr. 76 (quoting Tr. 364). She noted that Mohammad Obadah Nakawah, M.D., a dementia specialist, found that Alexander's cognitive disorders were "likely secondary to severe depression and anxiety." *Id.* (quoting Tr. 503).

Other testing showing memory deficits may have been the result of Alexander's "poor effort throughout the test." Tr. 76 (citing Tr. 499). The ALJ pointed to other testing that similarly showed that Alexander's actual memory might be better than the testing showed. Tr. 76–77. The ALJ noted that, in May 2019 testing by Adriana Strutt, Ph.D., Alexander tested "more poorly than individuals with genuine severe cognitive impairment who . . . required 24-hour supervision." Tr. 77 (quoting Tr. 542 (opining that Alexander's effort and motivation scores were worse

12

than those with late-stage Alzheimer's disease)). During a neurological examination by Atta Rehman, M.D., on February 19, 2019, Alexander denied experiencing memory loss. Tr. 517.

The ALJ analyzed several opinions of treating physicians, state agency medical reviewers, and examining physicians. Tr. 77–78. With respect to each opinion, the ALJ identified the level of persuasiveness she found the opinion to carry and explained why, including whether the opinion was consistent with the medical record. *Id.* The ALJ complied with the regulatory requirements for considering and articulating the consideration of medical opinions and prior administrative medical findings under 20 C.F.R. § 404.1520c.

In particular, the ALJ considered the opinions of state agency medical reviewers Richard Campa, Ph.D., who performed the initial review at the state level, and Michele Chappuis, Ph.D., who performed the review on reconsideration. Tr. 77–78. Both Drs. Campa and Chappuis reviewed Alexander's full psychological record, engaged in an analysis of the paragraph B criteria, and reached precisely the same opinion with respect to Alexander's mental RFC. That is, both stated that Alexander was able "to understand, remember, and carry[ ]out simple instructions, make simple decisions, attend and concentrate for extended periods[,] and interact adequately with co-workers and supervisors." Tr. 171, 186.

Relevant to the Plaintiff's arguments addressed separately below, both Drs. Campa and Chappuis answered an interrogatory to further elaborate on their findings. Tr. 601–02, 607. The interrogatories were identical and noted that both Drs. Campa and Chappuis had rated certain of Alexander's work activities as "[m]oderately limited." *Id.* The interrogatory asked the state agency medical reviewers to check a box indicating the percentage of the workday or workweek that an individual with a moderate limitation "would not be able to effectively perform the described work activity." *Id.* Dr. Campa checked the box corresponding to "30% to 39% of the workday or workweek," but Dr. Chappuis refused to answer the interrogatory as written. *Compare* Tr. 601–02 *with* Tr. 607.

Instead, Dr. Chappuis explained that the "SSA regulations do not define the term 'moderate' in the manner presented." Tr. 602. She elaborated that the term "moderate" simply means "'less than marked' but more than 'mild' or 'none.'" *Id.* She explained that a person's functional limitation is based on the extent to which a person's impairments interfere with the "ability to function independently, appropriately, effectively[,] and on a *sustained basis* in a work setting." *Id.* (emphasis added). She also explained that "[p]ercentages do not enter into the decision process for mental disability for adults." *Id.* The court notes that Dr. Chappuis' statements are precisely in accord with the relevant regulations. *See* Listing 12.00(F)(2)(describing the five-point rating scale); Listing

12.00(F)(3)(a) (noting that clinicians may use terms such as "mild" or "moderate" in a way that is inconsistent with the regulations); Listing 12.00(F)(3)(d) (explaining, as did Dr. Chappuis, that "[t]he degree of limitation is how we document our assessment of your limitation when using the area of mental functioning independently, appropriately, effectively, and on a sustained basis"). Dr. Chappuis went on to otherwise criticize the interrogatory and concluded that "[t]he preponderance of the evidence supports the decision that the claimant is able to do a wide range of simple work, without restriction." Tr. 602.

The ALJ found that the state agency medical reviewers' identical opinion about Alexander's mental RFC was "very persuasive." Tr. 77. She found that the mental RFC and interrogatories were only "persuasive." *Id.* The ALJ articulated the reasons for the level of persuasiveness, stating that Drs. Campa and Chappuis' mental RFC, as stated above, was "consistent with the evidence of record, regulations[,] and other opinions." *Id.* She endorsed Dr. Chappuis' explanation of the term "moderate" under the regulations by pointing out that Dr. Chappuis "explained that moderate in the regulations refer[s] to more than mild and less than marked but would not preclude all work activities." *Id.* It is thus clear to the court that the ALJ adopted the mental RFC found by both Drs. Campa and Chappuis with the clarification in the interrogatory given by Dr. Chappuis.

The RFC as found by the ALJ is supported by substantial evidence and was determined using the correct legal standards. Except as discussed specifically below, the RFC determination is unchallenged.

## E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs he previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f) (2017); *see also Perez*, 415 F.3d at 462. If the claimant can perform his past work, he is not disabled. 20 C.F.R. § 404.1520(f) (2017). If the claimant cannot perform his past work, the ALJ proceeds to step five. *See* 20 C.F.R. § 404.1520(g)(1) (2017).

The ALJ found that Alexander could not perform his past relevant work. Tr. 78–79. This finding is undisputed.

## F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)).

The ALJ found that Alexander could perform jobs that exist in significant numbers in the national economy. Tr. 79–80. The ALJ appropriately relied on the

VE's testimony that an individual of Alexander's age, education, and RFC would be able to work as a janitor, dishwasher, sorter, or laundry press operator. *Id.*

Because the VE's testimony was based on a hypothetical question that incorporated all the limitations reasonably recognized by the ALJ and Alexander's attorney cross-examined the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination. *See Masterson*, 309 F.3d at 273–74 (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross-examination).

Alexander argues that the hypothetical question to the VE did not include all the limitations that the ALJ "found persuasive and supported by the evidence of record." ECF No. 18 at 1. Specifically, Alexander seeks to capitalize on the differing answers given by Drs. Campa and Chappuis to the interrogatory, discussed in section D above. *Id.* at 12–13. Alexander argues that because Dr. Campa answered the interrogatory indicating that Alexander would not be able to effectively perform various work activities for 30–39% of the workday or workweek and because that limitation was not included in the hypothetical to the VE, the VE's answer to the hypothetical questions does not constitute substantial evidence upon which the ALJ should have relied in finding that Alexander could perform other work. Alexander

is really saying that Dr. Campa's interrogatory answer should have been included as a limitation in the RFC. The court disagrees.

The ALJ made her analysis very clear. She found the mental RFC as determined by both Drs. Campa and Chappuis to be very persuasive and explained her reasons. She used that mental RFC finding in crafting the ultimate RFC in her decision. *Compare* Tr. 74 *with* Tr. 171, 186. The ALJ understood the answers given by both experts to the interrogatory and highlighted Dr. Chappuis' answer. There is no reason to believe that the ALJ intended to incorporate Dr. Campa's interrogatory answer into the RFC, given that it is entirely inconsistent with the regulations and that the ALJ focused her decision exclusively on the answer Dr. Chappuis gave. The ALJ, as discussed above, otherwise correctly weighed the expert opinions. The ALJ fulfilled her duty to resolve the conflict between Dr. Campa's and Dr. Chappuis' inconsistent answers to the interrogatory by endorsing Dr. Chappuis' explanation of the SSA regulations. *See Masterson*, 309 F.3d at 272 (stating that the ALJ has the duty to resolve conflicts in medical opinions).

The court's review of the administrative record reveals that the ALJ employed the correct legal rules and that the findings at each of the five steps were supported by substantial evidence.

18

## 4. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion for summary judgment be DENIED.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on June 24, 2022.

_____
Peter Bray
United States Magistrate Judge